IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | CHAPTER 7 |
| DOUGLAS A. THEBES, | * | |
|     Debtor | * | |
| | * | CASE NO. 1:10-bk-03302 MDF |
| DOUGLAS A. THEBES, | * | |
|     Plaintiff | * | |
| | * | ADV. NO. 1:11-ap-00049 MDF |
| v. | * | |
| | * | |
| COMMONWEALTH OF PENNSYLVANIA, | * | |
| DEPARTMENT OF ENVIRONMENTAL | * | |
| PROTECTION, | * | |
|     Defendant | * | |
| | * | |

## OPINION[1]

In the above-captioned adversary proceeding, Douglas A. Thebes ("Debtor") seeks a ruling that injunctive orders issued against him by the Commonwealth of Pennsylvania, Department of Environmental Protection (the "DEP") are claims dischargeable under the Bankruptcy Code. Before me is the DEP's motion for summary judgment. For the reasons that follow, the motion will be granted.[2]

### I. Procedural History

On April 10, 2010, Debtor filed a petition for bankruptcy under Chapter 13. The case was subsequently converted to Chapter 11. On January 10, 2011, the case was converted to Chapter 7. The within adversary matter was commenced by Debtor on February 7, 2011, which was

---

[1]Drafted with the assistance of Alexander Rafael Perez, Law Clerk.

[2]This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and Fed. R. Bankr. P. 7001. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052.

answered by the DEP on March 10, 2011. On March 13, the DEP filed the within Motion with affirmative defenses along with documentation in support of the Motion and a brief. Shortly thereafter, the DEP filed a statement of material facts. Debtor filed an Answer to the Motion and to the DEP's affirmative defenses on April 6, 2011, and on April 28 filed a brief in response to the Motion. Thereafter, both parties filed reply and sur-reply briefs. The Motion is ripe for decision.

## II. Factual Findings

The DEP is responsible for administering and enforcing: the Solid Waste Management Act, Act of July 7, 1980, P.L. 380, as amended, 35 P.S. §§ 6018.101-6018.1003 ("SWMA"); the Clean Streams Law, Act of June 22, 1937, P.L. 1987, as amended, 35 P.S. §§ 691.1-691.1001; the Land Recycling and Environmental Remediation Standards Act, Act of May 19, 1995, P.L. 4, No. 2, as amended, 35 P.S. §§ 6026.101-6026.908; and the regulations promulgated under these acts.

Christopher R. Thebes, Frederick D. Thebes and Debtor (collectively, the "Thebes Family")[3] are the owners of a 58-acre parcel of land in Perry County, Pennsylvania. Frederick D. Thebes is the sole owner of an adjacent parcel of approximately 93 acres. Collectively, these two parcels will be referred to as the "Thebes Site." Before 1990, a portion of the Thebes Site had been permitted for use as a landfill by the Commonwealth. From April 10, 1990 until May 26, 2006, when no permits were in effect, the Thebes Family dumped or deposited solid waste on the site or allowed others to dump or deposit solid waste on the site without state authorization.

---

[3]Christopher R. Thebes is Debtor's brother, and Frederick D. Thebes is Debtor's father.

On May 4, 2007, the DEP issued an administrative order (the "Clean Up Order") directed to the Thebes Family and their related companies – Dynamite Disposal, Inc. and Fred D. Thebes and Sons, Inc. On October 3, 2007, the DEP imposed a Civil Penalty Assessment under SWMA on the Thebes Family and the two related companies in the amount of $5,731,448. The Clean Up Order and Civil Penalty Assessment were consolidated for appeal to the Environmental Hearing Board (the "EHB"), which held an evidentiary hearing on October 6, 2009. On appeal, the only issue argued was the reasonableness of the civil penalties assessed against the Thebes Family and the related corporate entities. Before the EHB issued its order, Debtor filed his bankruptcy petition. On May 13, 2010, the EHB issued an Adjudication and Order upholding the Civil Penalty Assessment and the Clean Up Order. *Christopher R. Thebes et al. v. Commonwealth of Pa., Dep't of Envtl. Prot.*, Docket No. 2007-144-L, 2010 Pa. Envirn. LEXIS 42 (Pa. EHB May 13, 2010).[4] No further appeal was taken.

The Clean Up Order directed Debtor, other members of the Thebes Family, and the related companies to take certain steps to aid in the remediation of the two parcels. Debtor is required, *inter alia,* to: (1) submit a report to the DEP identifying the location, nature, and extent of the solid waste disposed of or deposited on the Thebes Site after April 10, 1990 (the "Waste Characterization Report"); (2) excavate and remove solid waste[5]; (3) transport the excavated solid waste to a facility permitted to receive the waste; (4) employ a consultant to oversee the

---

[4]The civil penalty assessed by the DEP against the Debtor previously was held by this Court to be nondischargeable in the amount of $5,700,000. *See Commonwealth of Pa., Dep't of Envtl. Prot. v. Thebes (In re Thebes)*, 2011 WL 1239847 (Bankr. M.D. Pa. March 30, 2011).

[5]Debtor is to excavate, remove, and properly dispose of at least 750 tons of solid waste from the Thebes Site per month.

excavation and removal of the solid waste; (5) remove all roll-off containers and have the waste disposed of at a facility permitted to accept such waste; (6) submit for approval to the DEP a detailed plan for investigating, characterizing, and assessing the nature and extent of groundwater pollution at the Thebes Site (the "Site Characterization Work Plan"); and (7) provide to the DEP immediate access to the Thebes Site for the purpose of overseeing and monitoring the work required by the administrative order.

In his affidavit filed in support of the Motion, Anthony Rathfon, the DEP's Regional Waste Manager, states that Debtor has not identified all of the trenches of buried waste at the Thebes Site. DEP's Licensed Professional Geologist, Timothy Long ("Long"), also states that the pollution at the site is "ongoing and continuing, and will remain ongoing, until the Thebes Site is fully remediated." (Long Aff., March 7, 2011, ¶ 7.) In his supplemental affidavit prepared May 16, 2011, Long reiterated his concerns, stating that he observed two leachate seeps emerging from illegally-buried waste on the 58-acre parcel. A public water supply and a well for a commercial concern were less than 2000 feet from the buried waste. Long also observed leachate seeps emerging from the ground in close proximity to the wells of private residences on the 93-acre site. Debtor disputes whether there is continuing pollution at the Thebes Site, but offered no counter affidavit by an expert to rebut the allegations of the DEP.

### III. Discussion

*A. Summary judgment standard*

Federal Rule of Civil Procedure 56, made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, permits this Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

4

Case 1:11-ap-00049-MDF    Doc 49    Filed 10/19/11    Entered 10/20/11 15:03:44    Desc
Main Document    Page 4 of 12

to judgment as a matter of law." Fed. R. Civ. P. 56. In reviewing a motion for summary judgment, the facts and all reasonable inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986); *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits if any' which [it] believes demonstrate the absence of genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e)(2). A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There must be a genuine issue of material fact to preclude summary judgment. *Id.*

    B.    *Preliminary evidentiary issues*

Debtor has moved to strike Long's supplemental affidavit filed in support of the DEP's Motion, and the DEP has moved to strike paragraph 11 of Debtor's unsworn verification submitted in support of his objection. Federal Rule of Civil Procedure 56(c)(1), made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, permits parties to submit affidavits in support of their assertion that a fact either cannot be disputed or is disputed. *See* Fed. R. Civ. P. 56(c)(1). An affidavit or declaration used to support a motion for summary

5

judgment must meet the following requirements: (1) be made on the personal knowledge of the affiant; (2) set out facts that would be admissible in evidence; and (3) show that the affiant or declarant is competent to testify on the matters stated. *See* Fed. R. Civ. P. 56(c)(4). Further, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

       *1.    Debtor's verification in opposition to summary judgment*

In paragraph 11 of his verification, Debtor states: "[t]o the best of my knowledge, there is no continuing pollution on either of the above two sites." An opinion as to whether there is continuing pollution at the Thebes Site depends upon technical or specialized knowledge of environmental hazards and their abatement. *See Hirst v. Inverness Hotel Corp.*, 544 F.3d 221, 227 (3d Cir. 2008).[6] Debtor does not suggest that he has the expertise to qualify as an expert, nor does he suggest that he will produce expert testimony at trial to support his assertions. Materials offered in opposition to a motion for summary judgment are offered to establish that there is a genuine issue of material fact for trial. Summary judgement affidavits must set out specific facts and cannot be conclusory or based on hearsay. *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (citations omitted). Debtor's bald assertion is insufficient to meet the standards for expert testimony, therefore, it could not be admitted at trial. In the absence of admissible testimony to rebut the DEP's experts on the issue of continuing pollution at the site

---

[6]*See* Federal Rule of Evidence 701(c) (Admissible opinion testimony by a non-expert may not be "based on scientific, technical, or other specialized knowledge.")

there is no dispute as to a material fact for trial.[7] Accordingly, the DEP's motion to strike paragraph 11 of Debtor's unsworn verification is granted.

                        2.        *Long's supplemental affidavit in support of summary judgment*

In response to Debtor's assertion that there was no ongoing pollution on the Thebes Site, the DEP submitted Long's supplemental affidavit prepared after the Motion and Answer were filed. Based upon his personal inspection of the Thebes Site on April 26, 2011, Long provided several examples of observed pollution and concluded that it was ongoing and continuing. Debtor objects to the Court's consideration of this additional material in support of the Motion. "Where the reply affidavit merely responds to matters placed in issue by the opposition brief and does not spring upon the opposing party new reasons for the entry of summary judgment, reply papers- both briefs and affidavits- may properly address those issues." *Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1134 (7th Cir. 1996) (quoting *Baugh v. City of Milwaukee*, 823 F. Supp. 1452, 1457 (E.D. Wis. 1993)), *aff'd*, 41 F.3d 1510 (7th Cir. 1994); *Gov't Guarantee Fund of Republic of Finland v. Hyatt Corp.*, 960 F. Supp. 931, 936 n. 4 (D. V.I. 1997). As the supplemental affidavit in question facially meets all of the requirements of Federal Rule of Civil Procedure 56(c)(4) and responds to arguments made by the Debtor, the affidavit is properly before the Court. Accordingly, the Debtor's motion to strike the affidavit of Timothy Long is denied.

---

[7]The EHB conclusively found there to be groundwater contamination at the Thebes Site that would remain as a source of continuous pollution until abated. *See Christopher R. Thebes et al. v. Commonwealth of Pa. Dep't of Envirn. Prot.*, Docket No. 2007-144-L, 2010 Pa. Envirn. LEXIS 42, *29 (Pa. EHB May 13, 2010).

### C. *Environmental injunctions as a claim in bankruptcy*

To be discharged under the Bankruptcy Code, a mandatory injunction against a debtor must constitute a debt under 11 U.S.C. § 101(12). A debt is a "liability on a claim." 11 U.S.C. § 101(12). A "claim," in turn, includes a "right to an equitable remedy for breach of performance if such breach gives rise to right to payment. . . ." 11 U.S.C. § 101(5)(B). If the same breach provides the aggrieved party the alternative of either an equitable remedy or monetary damages, the right is categorized as a "claim." *In re Ben Franklin Hotel Assocs.*, 186 F.3d 301, 305 (3d Cir. 1999); s*ee also United States v. Apex Oil Co.*, 579 F.3d 734, 736 (7th Cir. 2009) (if the holder of an equitable claim can obtain a money judgment when an equitable remedy is unavailable, the claim may be discharged). However, if a creditor does not have the option of pursuing a money judgment, the equitable remedy is not a claim and may not be discharged in bankruptcy. *Id.* at 737.

The seminal case on the issue of whether an environmental injunction is a claim in bankruptcy is *Ohio v. Kovacs*, 469 U.S. 274 (1985). In *Kovacs*, the State of Ohio obtained an injunction requiring the defendants to clean up hazardous wastes on certain property. When defendants failed to comply, a state court receiver was appointed who took possession of the contaminated property, as well as other assets, and began to clean up the site. After the receiver was appointed, but before the contaminated site was remediated, Kovacs filed for personal bankruptcy. When Kovacs' trustee tried to recover assets from the receiver, the receiver pursued an injunction. Seeking to obtain some of Kovacs' post-bankruptcy income to pay for costs incurred in the clean up, the receiver argued that the injunction against Kovacs was not a claim. *Id*. at 282-83. When the case arrived at the Supreme Court, the Court affirmed the holdings of the

8

lower courts that the injunction was a dischargeable "claim." The Supreme Court held that while Kovacs was obligated to clean up the site, the pre-petition appointment of a receiver "dispossessed Kovacs, removed his authority over the site, and divested him of assets that might have been used by him to clean up the property." *Kovacs*, 469 U.S. at 283. "Although Kovacs had been ordered to 'cooperate' with the receiver, he was disabled by the receivership from personally taking charge of and carrying out the removal of wastes from the property." *Id.* Ohio's counsel having conceded that after the appointment of the receiver the only performance sought from Kovacs was the payment of money, the Supreme Court held that the environmental injunctions were converted into monetary obligations dischargeable in bankruptcy.

Since *Kovacs,* however, the Third Circuit has held that certain environmental injunctions are not claims and may not be discharged in bankruptcy. *Torwico Electronics, Inc. v. State of New Jersey, Dept. of Envtl. Protection (In re Torwico Electronics, Inc.)*, 8 F.3d 146 (3rd Cir. 1993), *cert. denied*, 114 S. Ct. 1576 (1994). In *Torwico* the debtor operated a manufacturing business on leased property in New Jersey. In August 1989, Torwico filed a petition under Chapter 11 listing the New Jersey Department of Environmental Protection and Energy ("NJDEPE") as holding a disputed and unliquidated claim. In November 1989, the NJDEPE had performed an on-site inspection of the leased property. Thereafter, the agency sent notices of environmental violations found at the site, including a hidden seepage pit containing hazardous waste. The claims bar date came and passed, but the NJDEPE did not file a claim. In April 1990, the NJDEPE issued an administrative order and a notice of civil administrative penalty. The administrative order required Torwico to submit a written closure plan for the seepage pit and assessed $22,500 in civil damages. Torwico argued before the bankruptcy court that the

9

requirements of the administrative order could only be satisfied by spending money and that it no longer was in possession of the property. Therefore, under *Kovacs*, the administrative order constituted a dischargeable claim. Torwico and the NJDEPE filed cross-motions for summary judgment. The bankruptcy court granted Torwico's motion finding that the administrative order should be treated as an unsecured claim. On appeal, the district court reversed, relying on *In re Chateaugay Corp.*, 944 F.2d 997 (2d Cir. 1991). In *Chateaugay*, the Second Circuit held that an injunction is a claim only if it "does no more than impose an obligation entirely as an alternative to a payment right." *Id.* at 1008. An injunction that is not a claim is "any order that to any extent ends, or ameliorates current pollution." *Id*.

In affirming the district court, the Third Circuit reasoned that the environmental injunctions levied against the debtor, unlike the rights asserted in *Kovacs*, were not claims. The issue turned on whether the order was an attempt to obtain the clean up of past environmental contamination or whether the order was an effort to end ongoing pollution. The Third Circuit noted that the NJDEPE was not seeking reimbursement for its expenses, but rather was pursuing a mandatory injunction requiring the debtor to clean up the site. The Third Circuit explained that "[t]he state can exercise its regulatory powers and force compliance with its laws, even if the debtor must expend money to comply. Under *Kovacs*, what the state cannot do is force the debtor to pay money to the state; at that point the state is no longer acting in its role as regulator, it is acting as a creditor."[8] *Torwico*, 8 F.3d at 150.

---

[8] The Third Circuit makes the policy argument that virtually all enforcement actions impose some cost on the debtor. *See Torwico*, 8 F.3d at 150 n.4. If any order requiring a debtor to expend money created a dischargeable claim, it is unlikely that a state could effectively enforce its laws. *Id.*

10

The injunction in this case falls squarely within *Torwico* and not within *Kovacs*. First, no state court receiver was appointed pre-petition to take control of the Thebes Site. The Supreme Court suggests that the result may have been different if Kovacs had filed for bankruptcy before the receiver was appointed. *Id.* at 284. Here, Debtor makes the conclusory argument that he has been dispossessed by the Chapter 7 bankruptcy trustee appointed to his case.[9] However, Debtor fails to allege that he has been prevented from entering the site or otherwise barred from complying with the Clean Up Order.

*Torwico* also makes it clear that the existence of a claim is not dependent upon whether the Commonwealth has the ability to ameliorate the ongoing pollution and seek reimbursement for its costs. "That the state may have had alternative means at its disposal to end the ongoing threat does not convert its statutory authority into a 'right to payment.'" *Id.* Here, though a right to repayment exists under the regulations controlling the assessment of civil penalties under the SWMA, the injunction is not converted into a right to payment.

Finally, in *Torwico*, the Third Circuit observed that, as in *In the Matter of CMC Heartland Partners*, the release of pollution is "'threatened and ongoing.'" 8 F.3d at 151 (quoting *In the Matter of CMC Heartland Partners*, 966 F.2d 1143, 1147 (7th Cir. 1992) (hereafter "*CMC*"). Requiring a debtor comply with an environmental injunction in the face of ongoing pollution is not a repackaging of a forfeited claim for damages for past conduct, but rather it is an attempt to prevent additional future damages. *See CMC*, 966 F.2d at 1147.

---

[9]The Thebes Site remains a part of the bankruptcy estate. There is no evidence that either the DEP or Trustee has prevented Debtor from complying with the Clean Up Order. To the contrary, the DEP continues to demand performance by Debtor.

11

The obligations owed by Debtor to DEP do not fit the standards set for a claim and, therefore, are not dischargeable in bankruptcy under § 727(b). By ensuring compliance with environmental laws, the DEP seeks to remedy a threatened and ongoing release of pollutants emanating from the Thebes Site.

**Conclusion**

The DEP has met its burden to show that there are no material facts in dispute and that it is entitled to judgment as a matter of law. Debtor has failed to successfully assert any facts creating a triable issue. Therefore, the DEP's Motion for summary judgment will be granted. An appropriate order will follow.

By the Court,

_____
Mary D. France
Chief Bankruptcy Judge

Date: October 19, 2011